# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ZapFraud, Inc.<br><br>      Plaintiff,<br><br>  v.<br><br>Proofpoint, Inc.<br><br>      Defendant. | Civil Action No. 19-cv-1691-MN<br><br>**JURY TRIAL DEMANDED** |

## FIRST AMENDED COMPLAINT

Plaintiff ZapFraud, Inc. ("ZapFraud"), for its Complaint against defendant Proofpoint, Inc. ("Defendant" or "Proofpoint"), hereby alleges as follows:

### Introduction

1. ZapFraud is a technology company founded by leading email security researcher Dr. Bjorn Markus Jakobsson. ZapFraud innovates in the area of email security and provides email security solutions. Among other things, ZapFraud's patented technology automatically and reliably identifies threats to email including Business Email Compromise scams—a growing threat that has caused a total of over $12.5 billion of global reported losses as of 2018—and protects businesses and their employees against email-based deception and fraud attacks.

2. Proofpoint has used, and continues to use ZapFraud's patented technology.

### Nature Of The Action

3. This action arises under 35 U.S.C. § 271 for Proofpoint's infringement of ZapFraud's United States Patent No. 10,277,628 ("the '628 patent").

## The Parties

4. Plaintiff ZapFraud is a Delaware corporation with its principal place of business at 118 Ramona Rd, Portola Valley, CA 94028. ZapFraud is operated and controlled by Dr. Jakobsson.

5. Defendant Proofpoint is a Delaware corporation with its principal place of business at 892 Ross Drive, Sunnyvale, CA 94089. Proofpoint may be served with process through its registered agent, the Corporation Service Company at 251 Little Falls Drive, Wilmington, DE 19808.

6. Proofpoint provides appliance-based as well as cloud-based email security solutions. Those solutions use and benefit from Dr. Jakobsson's patented technology, including the '628 patent.

## Jurisdiction And Venue

7. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

8. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (c), and 1400(b), because, among other things: Proofpoint is incorporated under the laws of the State of Delaware; Proofpoint has committed, aided, abetted, contributed to, and/or participated in the commission of acts giving rise to this action within the State of Delaware and this judicial district and has established minimum contacts within the forum such that the exercise of jurisdiction over Proofpoint would not offend traditional notions of fair play and substantial justice; Proofpoint has placed products and services that practice the claims of the '628 patent into the stream of commerce with the reasonable expectation or knowledge that actual or potential users of such products or services were located within this judicial district; and Proofpoint has sold, advertised, solicited

customers, and marketed and distributed its products and services that practice the claims of the '628 patent in this judicial district.

### The '628 Patent

9. ZapFraud incorporates by reference the preceding paragraphs as if fully set forth herein.

10. The '628 patent, entitled "Detecting Phishing Attempts," was duly and legally issued by the United States Patent and Trademark Office on April 30, 2019 and corrected on October 8, 2019.  A copy of the '628 patent is attached hereto as Exhibit A.  Dr. Jakobsson is the sole inventor of the '628 patent.

11. ZapFraud is the exclusive owner of all rights, title, and interest of the '628 patent, and has the right to bring this suit for injunctive relief and to recover damages for any current or past infringement of the '628 patent.

### Background Facts

12. Dr. Jakobsson founded ZapFraud in 2014.

13. ZapFraud pioneered the detection of Business Email Compromise scams through automated analysis of deceptive content and structure, and takes actions to, for example, quarantine, discard, tag, or deliver the incoming emails.

14. Dr. Jakobsson is and has been a frequent speaker on email fraud prevention, including on ZapFraud's fraud detection technology at industry events and conferences, such as RSA Conference 2016, Black Hat USA 2015, and RSA Conference 2014.

15. Defendant Proofpoint attends such industry events and conferences as a sponsor and/or an exhibitor.  Such conferences permit attendees to learn about important developments in information and email security through first-hand interactions with peers, luminaries, and

emerging and established companies. For example, Proofpoint attended Black Hat USA 2015, an industry conference where Dr. Jakobsson presented.

16. In December 2015, Proofpoint invited Dr. Jakobsson to Proofpoint's headquarters to present ZapFraud's technology. During that meeting, Dr. Jakobsson explained in detail the rising threat of Business Email Compromise and how ZapFraud technology detects, identifies, and contains those kinds of attacks. The presentation slide deck for that meeting is attached hereto as Exhibit B.

17. Proofpoint executives attending the meeting recognized the growing threat, but refused to license ZapFraud's patented solution.

18. Five months later, Proofpoint added a Business Email Compromise protection feature to its flagship Proofpoint Email Protection product.

19. Proofpoint continues to market and sell its flagship product, which includes Business Email Compromise features that make use of ZapFraud's patented technology. Further, Proofpoint continues to knowingly, intentionally, and willfully infringe ZapFraud's patent so as to obtain their significant benefits without paying any compensation to ZapFraud.

## COUNT I

### Infringement Of The '628 Patent

20. ZapFraud incorporates by reference the preceding paragraphs as if fully set forth herein.

21. The '628 patent generally relates to a system, method, and computer program for detecting fraud or phishing attempts in email communications.

22. The '628 patent is valid and enforceable.

23. At the time of the invention of the '628 patent, email services used various technologies such as whitelisting, blacklisting, Domain-based Message Authentication, Reporting & Conformance ("DMARC"), and Domain Keys Identified Mail ("DKIM") to protect email recipients from potential spam, fraud, or phishing attempts.

24. However, existing technologies could be readily defeated by unscrupulous individuals who craft spam, fraud, scam, or phishing emails. For example, the unscrupulous individual may use terms that a human would recognize, but might not appear on a blacklist. As another example, existing technologies were not capable of detecting a type of phishing-attempt emails that incorporate human-readable content indications of association of a message with an authoritative entity, and thus appear to be legitimate/trustworthy to a recipient. The degree of possible customization of electronic communications makes it particularly difficult for existing email filters to provide sufficient protection.

25. The invention of the '628 patent solves the problems with existing technologies by, for example, combining an assessment of the likely end-user interpretation of the message with an assessment of whether the apparent sender matches the actual sender, and taking action in response, such as filtering or reporting the message.

26. In violation of 35 U.S.C. § 271, Proofpoint has infringed and/or induced others to infringe one or more claims of the '628 patent by making, using, selling, and/or offering for sale in the United States, and/or importing into the United States, products, solutions, systems, and services encompassed by those claims, including email security products and services that scan the display name of emails to identify email security threats, including, but not limited to, Proofpoint Email Protection, Email Fraud Defense, and Proofpoint Essential.

27.     Proofpoint provides email security products and services that protect customers against email-based targeted social engineering attacks known as Business Email Compromise.

28.     Proofpoint's email security products and services such as Proofpoint Email Protection, Email Fraud Defense, and Proofpoint Essential analyze attributes of incoming emails including, for example, email headers, reply-to addresses and display names to detect and classify impostor emails.

29.     For example, Proofpoint infringes at least claim 1 of the '628 patent through its classification system (such as Proofpoint Email Protection) for detecting attempted deception in an electronic communication (such as an incoming email), comprising:

   a. a client device (such as a Proofpoint Email Protection customer portal) used to access the electronic communication addressed to a user of the client device;

   b. at least one of a profile and content database (such as a Proofpoint repository used to store display names and legitimate email addresses for a customer's users who are most likely to be targeted for an impostor attack); and

   c. at least one server (such as a Proofpoint Email Protection server) in communication with the client device and the at least one of the profile and content database, the at least one server comprising:

       i. an interface configured to receive the electronic communication; and

       ii. a set of one or more processors configured to:

           1. parse a display name associated with the electronic communication;

           2. determine, by at least one classifier component (such as a component for the impostor classifier feature), that the electronic

communication appears to have been transmitted on behalf of an authoritative entity (such as an executive of the customer) by:

a. computing a similarity distance between the display name and at least a name of the authoritative entity (such as the name of the executive), wherein the name of the authoritative entity is retrieved from the at least one of the profile and the content database, wherein the similarity distance is computed by comparison of items by at least one of:

   i. basing the comparison on at least one of a match between the display name of the electronic communication (such as the display name of the incoming email's sender) and the display name of the authoritative entity, and

   ii. a match between headers associated with the electronic communication (such as the header of the incoming email) and headers associated with the authoritative entity (such as the email header of the executive),

   iii. wherein the matches are determined by at least one of: determining that the compared items are the same, determining that the compared items have a Hamming distance below a threshold value,

determining that the compared items have an edit distance below a threshold value, determining that a support vector machine indicates a similarity based on previously trained examples, determining a similarity score based on how many characters were replaced by characters of sufficient similarity and performing at least one normalization followed by a comparison;

3. determine, by the at least one classifier component, that the electronic communication was not transmitted with authorization from the authoritative entity (such as by determining that, for example, the sender's email address does not match that of the customer executive, and/or the sender's header email address does not match the reply-to email address);

4. based at least in part on determining that the electronic communication appears to have been transmitted on behalf of the authoritative entity and determining that the electronic communication was not transmitted with authorization from the authoritative entity, perform a security determination including classifying the electronic communication, wherein the classifying includes two or more security classifications including good and bad (such as by determining an Impostor Email Score); and

        5. based at least in part on the security determination resulting in a bad classification, perform an action comprising at least one of erasing the electronic communication, marking up the electronic communication at least in part by adding a warning or an explanation, flagging the electronic communication, forwarding the electronic communication to a third party, placing the electronic communications in the spam folder, and forwarding the electronic communication to a repository (such as quarantining, rejecting, discarding, and/or re-routing the email); and

    iii. a memory coupled to the processor and configured to provide the processor with instructions.

30. Proofpoint infringes at least claim 1 of the '628 patent under 35 U.S.C. § 271(a) by making, using, selling, and/or offering for sale in the United States, and/or importing into the United States such a classification system. For example, Proofpoint makes the system by providing all the components of the system and combining the components into an infringing system. As another example, Proofpoint uses the system by placing the system into service, exercising control of the system, and obtaining benefits from using the system.

31. Third parties, including Proofpoint's customers and partners, have infringed, and continue to infringe, one or more claims of the '628 patent under 35 U.S.C. § 271(a), either literally and/or under the doctrine of equivalents, by making, using, selling, and/or offering for sale in the United States, and/or importing into the United States, Proofpoint email security products and services, including, but not limited to, Proofpoint Email Protection, Email Fraud Defense, and Proofpoint Essential.

32. Proofpoint has had knowledge of and notice of the '628 patent and its infringement since at least the filing of this Complaint.

33. Proofpoint has induced infringement, and continues to induce infringement, of one or more claims of the '628 patent under 35 U.S.C. § 271(b) since at least the filing of this Complaint. Proofpoint actively, knowingly, and intentionally induced, and continues to actively, knowingly, and intentionally induce, infringement of the '628 patent by selling or otherwise supplying Proofpoint email security products and services, including, but not limited to, Proofpoint Email Protection, Email Fraud Defense, and Proofpoint Essential, with the knowledge and intent that third parties will use, sell, and/or offer for sale in the United States, and/or import into the United States these products and services to infringe the '628 patent; and with the knowledge and intent to encourage and facilitate the infringement through the dissemination of these products and services and/or the creation and dissemination of promotional and marketing materials, supporting materials, instructions, product manuals, and/or technical information related to these products and services.

34. Proofpoint has contributed to the infringement by third parties, including Proofpoint's customers, and continues to contribute to infringement by third parties, of one or more claims of the '628 patent under 35 U.S.C. § 271(c) since at least the filing of this Complaint, by selling and/or offering for sale in the United States, and/or importing into the United States, Proofpoint email security products and services, including, but not limited to, Proofpoint Email Protection, Email Fraud Defense, and Proofpoint Essential, knowing that these products and services constitute a material part of the inventions of the '628 patent, knowing that these products and services are especially made or adapted to infringe the '628 patent, and knowing that these

products and services are not staple articles of commerce suitable for substantial noninfringing use.

35. ZapFraud has been and continues to be damaged by Proofpoint's infringement of the '628 patent, and will suffer irreparable injury unless the infringement is enjoined by this Court.

36. Proofpoint's infringement of the '628 patent has been and continues to be willful since at least the filing of this Complaint.

37. Proofpoint's conduct in infringing the '628 patent renders this case exceptional within the meaning of 35 U.S.C. § 285.

## **Prayer For Relief**

WHEREFORE, ZapFraud prays for judgment as follows:

A. That Proofpoint has infringed the '628 patent;

B. That Proofpoint's infringement of the '628 patent has been willful;

C. That Proofpoint, its officers, agents, and employees, and those persons in active concert or participation with any of them, and their successors and assigns, be permanently enjoined from infringement, inducing infringement, and contributory infringement of the '628 patent, including but not limited to the making, using, selling, and/or offering for sale in the United States, and/or importing into the United States, any devices, products, software, or methods that infringe the '628 patent before its expiration date;

D. That ZapFraud be awarded all damages adequate to compensate it for Proofpoint's infringement of the '628 patent, such damages to be determined by a jury and, if necessary to adequately compensate ZapFraud for the infringement, an accounting, and that such damages be trebled and awarded to ZapFraud with pre-judgment and post-judgment interest;

E. That this case be declared an exceptional case within the meaning of 35 U.S.C. § 285 and that ZapFraud be awarded the attorney fees, costs, and expenses incurred in connection with this action; and

F. That ZapFraud be awarded such other and further relief as this Court deems just and proper.

## Demand For Jury Trial

Plaintiff ZapFraud hereby demands a trial by jury on all issues so triable.


Dated: October 16, 2019

*Of Counsel:*

Jonas McDavit
Wen Xue
jmcdavit@desmaraisllp.com
wxue@desmaraisllp.com
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
Telephone: 212-351-3400
Facsimile: 212-351-3401

Respectfully submitted,

FARNAN LLP

*/s/ Brian E. Farnan*
Brian E. Farnan (No. 4089)
Michael J. Farnan (Bar No. 5165)
919 North Market St., 12th Floor
Wilmington, DE 19801
Telephone: 302-777-0300
Facsimile: 302-777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com


*Attorneys for Plaintiff ZapFraud, Inc.*