IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ZAPFRAUD, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 19-1691-CFC |
| | ) | |
| PROOFPOINT, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**PROOFPOINT INC.'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO TRANSFER VENUE UNDER 28 U.S.C. § 1404(A)**

Karen E. Keller (No. 4489)
David M. Fry (No. 5486)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
dfry@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendant*

OF COUNSEL:
Katherine Vidal
Michael R. Rueckheim
WINSTON & STRAWN LLP
275 Middlefield Road, Suite 205
Menlo Park, CA 94025
(650) 858-6500

William M. Logan
WINSTON & STRAWN LLP
1111 Louisiana Street, 25th Floor
Houston, TX 77002-5242
(713) 651-2766

Dated: February 5, 2020

## <u>TABLE OF CONTENTS</u>

I.   Summary of the argument ...................................................................1

II.  Nature and Stage of the Proceedings....................................................2

III. Statement of Facts...............................................................................4

     A.   Proofpoint is Headquartered in the Northern District of California and Has No Physical Facilities in Delaware ......................................4

     B.   ZapFraud Also Operates from Northern California, Not Delaware..........5

     C.   Important Third Parties Reside in the Northern District of California ......6

IV.  Legal Standards ..................................................................................7

V.   Argument ............................................................................................9

     A.   ZapFraud Could Have Brought This Action in the Northern District of California...........................................................................................9

     B.   ZapFraud's Choice of Forum is not Dispositive .................................9

     C.   Defendant's Choice of Forum Favors Transfer...................................9

     D.   The Location Where the Claims Arose Favors Transfer .........................10

     E.   Both Parties Will Find the Northern District of California More Convenient, Favoring Transfer....................................................11

     F.   The Locations of Third-Party Witnesses Favors Transfer ......................12

     G.   The Location of Evidence in Northern California Favors Transfer.........13

     H.   The Enforceability of a Judgment Favors Neither Forum .......................15

     I.   Practical Considerations Favor Transfer .................................................15

     J.   Litigants Will Face Less Administrative Congestion in the Northern District of California, Favoring Transfer ...................................16

K.    The Northern District of California has a Greater Interest in Deciding Local Issues about Proofpoint's Local Workers ......................................17

L.    Delaware's Public Policy Weighs Minimally Against Transfer, if at All 18

M.    The State Law Factor is Inapplicable .......................................................19

VI. Conclusion ...........................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Labs. v. Roxane Labs., Inc.*,
    C.A. No. 12-457-RGA, 2013 WL 2322770 (D. Del. May 28, 2013)................17

*Affymetrix, Inc. v. Synteni, Inc.*,
    28 F. Supp. 2d 192 (D. Del. 1998)......................................................................12

*Angiodynamics, Inc. v. Vascular Solutions, Inc.*,
    C.A. No. 09-554-JJF, 2010 WL 3037478 (D. Del. July 30, 2010) ...................14

*Applied Predictive Techs., Inc. v. MarketDial, Inc.*,
    C.A. No. 18-963-CFC, 2019 WL 2745724 (D. Del. July 1, 2019) ..............15, 19

*Blackbird Tech LLC v. Cloudflare, Inc.*,
    C.A. No. 17-283-MSG, 2017 WL 4543783 (D. Del. Oct. 11, 2017)...........11, 17

*In re Genentech, Inc.*
    566 F.3d 1338 (Fed. Cir. 2009) ..........................................................................13

*Good Tech. Corp. v. AirWatch, LLC*,
    C.A. No. 14-1092-LPS-CJB, 2015 WL 296501 (D. Del. Jan. 21,
    2015) .....................................................................................................................18

*In re Hoffman-La Roche Inc.*,
    587 F.3d 1333 (Fed. Cir. 2009) ..........................................................................17

*Illumina*, *Inc. v. Complete Genomics, Inc.*,
    C.A. No. 10-649-RFK, 2010 WL 4818083 (D. Del. Nov. 9, 2010)...................12

*IpVenture, Inc. v. Acer, Inc.*,
    879 F. Supp. 2d 426 (D. Del. 2012).....................................................................16

*Jumara v. State Farm Ins. Co.*,
    55 F.3d 873 (3d Cir. 1995) .........................................................................*passim*

*In re Link_A_Media Devices Corp.*,
    662 F.3d 1221 .........................................................................................................9

*Papst Licensing GmbH & Co. KG v. Lattice Semiconductor Corp.*,
126 F. Supp. 3d 430 (D. Del. 2015)..................................................................9, 10

*Round Rock Research, LLC v. Dell, Inc.*,
904 F. Supp. 2d 374 (D. Del. 2012)...................................................................18

*Shutte v. Armco Steel Corp.*,
431 F.2d 22 (3d Cir. 1970) .................................................................................8

*Signal Tech, LLC v. Analog Devices, Inc.*,
C.A. No. 11- 1073-RGA, 2012 WL 1134723 (D. Del April 3,
2012) .................................................................................................................16

*Teleconference Sys. v. Proctor & Gamble Pharm., Inc.*,
676 F. Supp. 2d 321 (D. Del. 2009)...................................................................11

*Tessera, Inc. v. Broadcom Corp.*,
C.A. No. 16-379-LPS-CJB, 2017 WL 1065865 (D. Del. Mar. 21,
2017) ...................................................................................................................7

*Ultravision Techs., LLC v. RMG Networks Holding Corp.*,
C.A. No. 18-1333-CFC, 2019 WL 1985110 (D. Del. May 6, 2019) .............8, 15

*Williamsburg Furniture, Inc. v. Lippert Components, Inc.*,
C.A. No. 19-1993-CFC, 2020 WL 331119 (D. Del. Jan. 21, 2020)...............9, 15

**Statutes**

28 U.S.C. § 1400(b) ..................................................................................................7

28 U.S.C. § 1404(a) .............................................................................................1, 7

35 U.S.C. § 101 .........................................................................................................3

## I.    SUMMARY OF THE ARGUMENT

Proofpoint, Inc. ("Proofpoint") submits this brief in support of its Motion to Transfer to the Northern District of California pursuant to 28 U.S.C. § 1404(a).

The Court should transfer this case at least because of California's unique connection to this case and for the convenience of the expected witnesses. Both parties are headquartered in California, within approximately seventeen miles of each other, and close to the San Jose California federal courthouse. Not surprisingly, Proofpoint's expected witnesses reside in California—for example, the employees who developed the primary accused Imposter Classifier feature—or elsewhere outside of Delaware. Similarly, ZapFraud's primary witness, its founder Dr. Bjorn Markus Jakobsson who is also the sole named inventor on ZapFraud's asserted patent, is also believed to reside and work in California. Indeed, ZapFraud's complaint highlights the unique California connection by focusing on a meeting between the parties, at Proofpoint's headquarters, where ZapFraud allegedly presented its technology. D.I. 10, ¶¶ 16-17.

Relevant third parties are also located in California. Proofpoint has already identified an author of relevant prior art who lives in California. The attorney and patent agent who filed and prosecuted ZapFraud's patent application live there too. Other relevant companies—Paypal and Agari—are also headquartered in California. Dr. Jakobsson was employed at those companies around the time the

ZapFraud patent was being prosecuted, and obtained additional fraud protection patents there, suggesting that discovery of those companies is necessary to understand the full history of development.

In contrast, the only particularized connection to Delaware is that both parties are incorporated in the State—but this fact does not trump the strong convenience factors that would be achieved by transferring the case. Nor is the presence of co-pending ZapFraud litigations in Delaware dispositive. Two of these defendants, FireEye, Inc. and Barracuda Networks, Inc., have already moved to transfer to the Northern District of California. And the only remaining defendant, Mimecast North America, Inc. ("Mimecast"), has indicated that it does not oppose these transfer requests. Moreover, Delaware courts generally recognize that when cases, as here, are in a very early stage, considerations relating to co-pending cases are either speculative or weigh only slightly against transfer.

## II.    NATURE AND STAGE OF THE PROCEEDINGS

ZapFraud filed its Complaint on September 10, 2019, alleging infringement U.S. Patent No. 10,277,628 ("the '628 Patent"). D.I. 1; D.I. 10 (amended). ZapFraud also asserted the '628 Patent against other defendants on the same day. C.A. Nos. 19-1687,[1] 19-1688,[2] 19-1689,[3] 19-1690[4] (D. Del.) ("the concurrent

---

[1] *ZapFraud, Inc. v. Barracuda Networks, Inc.* Hereinafter "Barracuda Docket."
[2] *ZapFraud, Inc. v. FireEye, Inc.* Hereinafter "FireEye Docket."
[3] *ZapFraud, Inc. v. Fortinet, Inc.* Hereinafter "Fortinet Docket."

litigations").  One of these defendants, Fortinet, Inc., has already settled.  Fortinet Docket, D.I. 13.

On November 22, 2019, Mimecast filed a Rule 12(b)(6) motion to dismiss ZapFraud's claims for ineligible subject matter under 35 U.S.C. § 101.  Mimecast Docket, D.I. 20-21.  Proofpoint and FireEye filed similar motions, incorporating by reference the Mimecast motion.  Proofpoint's motion identified that it intended to seek transfer to the Northern District of California.  D.I. 12, at 2 n.1.  These motions are pending.

On December 3, 2019, FireEye moved to transfer to the Northern District of California.  FireEye Docket, D.I. 15.  A few weeks later, Barracuda also filed a motion to transfer to the Northern District of California.  Barracuda Docket, D.I. 22.  Mimecast, who is not headquartered in California, does not seek transfer itself, but nonetheless does not oppose the Court granting FireEye's, Barracuda's, and Proofpoint's transfer requests.  Declaration of Michael Rueckheim ("Rueckheim Decl." submitted herewith), ¶ 2.

Each of these cases are in a very early stage.  No defendant has filed an answer to date, and the Court has yet to issue a scheduling order.

---

[4] *ZapFraud, Inc. v. Mimecast N.A., Inc.*  Hereinafter "Mimecast Docket."

## III.   STATEMENT OF FACTS

### A.   Proofpoint is Headquartered in the Northern District of California and Has No Physical Facilities in Delaware

Proofpoint is a Delaware corporation and has its headquarters and principal place of business in the Northern District of California in Sunnyvale, CA, less than 11 miles from the federal courthouse in San Jose.  D.I. 10, ¶ 5; Rueckheim Decl., ¶ 3.  Proofpoint has 922 employees in its northern California offices.  Declaration of John Dials ("Dials Decl." submitted herewith), ¶ 3.  In contrast, only three Proofpoint employees work remotely from Delaware, none of whom are expected to have discoverable information about, or unique roles with respect to, the accused products or technology.  *Id.*, ¶ 4.  Proofpoint does not have any physical facilities in Delaware.  *Id.*

Proofpoint makes its primary operation, marketing, sales, pricing, and finance decisions at its Sunnyvale headquarters.  *Id.*, ¶ 2.  Of the three accused products (Proofpoint Email Protection, Email Fraud Defense, and Proofpoint Essential), research and development for two of these (Proofpoint Email Protection and Proofpoint Essential) occurred at Proofpoint's Sunnyvale headquarters.  *Id.*, ¶ 5; D.I. 10, ¶ 26.  The vast majority of research and development for the other product (Email Fraud Defense) occurred in Colorado.  Dials Decl., ¶ 5.  No research and development work occurs in Delaware.  *Id.*

4

ZapFraud emphasizes the ability to "classify impostor emails" as the gist of its patented technology and tied its accusations to Proofpoint's Imposter Classifier software.  *See* D.I. 10, ¶¶ 28-29 (identifying Proofpoint's "imposter classifier feature").  Most of the research and development related to the Proofpoint's Impostor Classifier solution occurred at Proofpoint's Sunnyvale headquarters, so the majority of employees who worked on Impostor Classifier, and the related documents involved, reside in California.  Dials Decl., ¶ 6.  Proofpoint expects to identify at least Director of Product Management Mike Lee and others in California as individuals knowledgeable about Proofpoint's accused technology, marketing and sales—but none in Delaware.  *Id.*, ¶ 7.

ZapFraud's complaint focuses on an allegation that Dr. Jakobsson met in Sunnyvale with certain Proofpoint "executives" who declined to license the patented technology.  D.I. 10, ¶ 17.  The group of executives included David Knight, who resides in northern California.  Dials Dec., ¶ 8.  The group contained no executives who reside in Delaware.  *Id.*

**B.    ZapFraud Also Operates from Northern California, Not Delaware**

ZapFraud is a Delaware corporation and has its headquarters in the Northern District of California, in Portola Valley.  D.I., 10 ¶ 4.  Google Maps calculated a 15.4 mile driving distance between ZapFraud's and Proofpoint's headquarters.

Rueckheim Decl., ¶ 3.  Upon information and belief, ZapFraud does not have any facilities or employees in Delaware.  *Id.*, ¶ 4.

Dr. Jakobsson founded, owns, and controls ZapFraud.  D.I. 10, ¶¶ 4, 12. The asserted '628 Patent names him as the sole inventor.  *Id.*, ¶ 10.  The '628 file wrapper indicates that Dr. Jakobsson had an address at 118 Wyndham Drive in Portola Valley when he filed an application for the asserted patent.  Rueckheim Decl., ¶ 5.  He is the only executive from ZapFraud who is alleged to have met in Sunnyvale with Proofpoint "executives" to discuss the patented technology.  D.I. 10, ¶ 17.  He appears to presently work in Dublin, another city in the Northern District of California.  Rueckheim Decl., ¶ 6.

### C.    Important Third Parties Reside in the Northern District of California

Dr. William M. Tyson, a senior computer scientist in Menlo Park, California, resides in the Northern District of California beyond reach of Delaware's trial subpoena power.  FireEye Docket, D.I. 17, ¶ 6.  Dr. Tyson published a mailing list post titled, "3 suggested rules regarding forged local addresses."  *Id.*  That post is relevant prior art and describes an email fraud detection method that examines the sender of an email by comparing the display name to a database of email addresses and display name pairings.  *Id.*

Attorney Robyn Wagner and patent agent Yeu-Ting George Cheng were among the attorneys who filed and prosecuted the application for the asserted '628

Patent. Rueckheim Decl., ¶ 5, 7-9. They both work for a law firm in Cupertino, a city within the Northern District of California. *Id.* Several claim amendments, arguments and examiner interviews mere made during prosecution, making these third parties potentially relevant witnesses for the present case. *See id.* Moreover, during this time period, Dr. Jakobsson appears to have worked for, and filed additional fraud protection patents at, California companies such as PayPal, Inc. and Agari Data, Inc. *See id.*, ¶¶ 6, 10.

## IV.  LEGAL STANDARDS

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

The first step in the transfer analysis is to determine whether this action could have been brought in the proposed transferee venue. *Tessera, Inc. v. Broadcom Corp.*, C.A. No. 16-379-LPS-CJB, 2017 WL 1065865, at *4 (D. Del. Mar. 21, 2017). "Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b).

Next, courts "consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better

served by transfer to a different forum." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). To do so, courts often consider the non-exhaustive list of 12 "*Jumara* factors." *See Ultravision Techs., LLC v. RMG Networks Holding Corp.*, C.A. No. 18-1333-CFC, 2019 WL 1985110, at *1 (D. Del. May 6, 2019) (examining the 12 *Jumara* factors). Six of those factors are private:

> [1] plaintiff's forum preference as manifested in the original choice; [2] the defendant's preference; [3] whether the claim arose elsewhere; [4] the convenience of the parties as indicated by their relative physical and financial condition; [5] the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and [6] the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Jumara,* 55 F.3d at 879 (citations omitted). The other six factors are public in nature:

> [7] the enforceability of the judgment; [8] practical considerations that could make the trial easy, expeditious, or inexpensive; [9] the relative administrative difficulty in the two fora resulting from court congestion; [10] the local interest in deciding local controversies at home; [11] the public policies of the fora; and [12] the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879–80 (citations omitted). "The burden is on the moving party to establish that a balancing of proper interests weigh[s] in favor of the transfer." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970).

## V.    ARGUMENT

### A.    ZapFraud Could Have Brought This Action in the Northern District of California

Regarding the preliminary issue, ZapFraud could have brought this case in the Northern District of California, where Proofpoint has its headquarters and principal place of business.  D.I. 10, ¶ 5.

### B.    ZapFraud's Choice of Forum is not Dispositive

Although the plaintiff's choice of forum may weigh against transfer, a plaintiff's choice of forum alone does not outweigh the other *Jumara* factors when, as here, the remaining balance of interests weighs in favor of transfer.  *E.g., Papst Licensing GmbH & Co. KG v. Lattice Semiconductor Corp.*, 126 F. Supp. 3d 430, 446-47 (D. Del. 2015) (transferring case based on the location of witnesses, records, and practical considerations, despite the plaintiff's choice of forum); *Williamsburg Furniture, Inc. v. Lippert Components, Inc*., C.A. No. 19-1993-CFC, 2020 WL 331119 (D. Del. Jan. 21, 2020) (ordering transfer despite plaintiff's choice of Delaware forum); *In re Link_A_Media Devices Corp.*, 662 F.3d 1221 (Fed. Cir. 2011) (vacating lower court decision when witnesses, documents, and relevant events were all outside the plaintiff's chosen forum).

### C.    Defendant's Choice of Forum Favors Transfer

While a plaintiff's choice of forum is a factor in deciding a motion to transfer, so too is the defendant's forum preference.  *Jumara*, 55 F.3d at 879.

Proofpoint is headquartered in the Northern District of California and prefers that forum for the convenience of it witnesses and the reasons stated herein. This factor weighs in favor of transfer.

### D.    The Location Where the Claims Arose Favors Transfer

For this third *Jumara* factor, courts generally look to relevant events in the proposed district and to "the location of the production, design and manufacture of the accused instrumentalities." *Papst*, 126 F. Supp. 3d at 439.

Here, ZapFraud has already highlighted potentially relevant events that occurred in California. Specifically, ZapFraud alleges that Proofpoint invited its founder and named inventor, Dr. Jakobsson, to Proofpoint's headquarters, in Sunnyvale, to present Zapfraud's technology; that Proofpoint executives attended the meeting and declined to license ZapFraud's patented solution; and that Proofpoint added a Business Email Compromise protection feature to its products five months later. D.I. 10, ¶¶ 16-18.

Additionally, Proofpoint performed engineering of the Impostor Classifier features and two of the three accused products at its headquarters in the Northern District of California. Dials Decl., ¶¶ 5-6. In contrast, Proofpoint performed no research or development of any accused product or technology in Delaware and knows of no other potentially relevant event or activity that occurred in Delaware. *Id*. This factor weighs strongly in favor of transfer.

### E.  Both Parties Will Find the Northern District of California More Convenient, Favoring Transfer

The fourth *Jumara* factor, the convenience of the parties, weighs in favor of transfer when, as here, the party seeking transfer identifies witnesses in the proposed venue and the opposing party "has not identified a single relevant witness located in Delaware." *Teleconference Sys. v. Proctor & Gamble Pharm., Inc.*, 676 F. Supp. 2d 321, 333 (D. Del. 2009).

Here, both parties maintain their principal place of business in the Northern District of California.  D.I. 10, ¶¶ 4-5.  The employees involved in the research and development for the accused Proofpoint Email Protection product, the Proofpoint Essential product, and the Impostor Classifier software primarily work at Proofpoint's Sunnyvale headquarters.  Dials Decl., ¶¶ 5, 6.[5]  Proofpoint also makes its primary operation, marketing, sales, pricing, and finance decisions at its Sunnyvale headquarters.  *Id.*, ¶ 2.  Not surprisingly, Proofpoint has already identified relevant knowledgeable employee witnesses who reside in California. *Id.*, ¶¶ 7-8.  Furthermore, Dr. Jakobsson, who owns and operates ZapFraud and is the sole named inventor on the '628 Patent, also resides in Northern California. D.I. 10, ¶¶ 4, 10; Rueckheim Decl., ¶¶ 5-6.

---

[5] Additionally, the vast majority of research and development for the other accused product (Email Fraud Defense) occurred in Colorado, which is located closer to California than Delaware.  Dials Decl., ¶ 5; *Blackbird Tech LLC v. Cloudflare,*

As such, transferring the case would benefit the vast majority of witnesses located in the Northern District of California from both sides. To reach the nearest courthouse, these witnesses would need only drive a handful of miles rather than fly for hours across the country to Delaware each way. For these reasons, transferring the case to the Northern District of California will greatly improve the convenience of the parties. This factor weighs strongly in favor of transfer.

### F.    The Locations of Third-Party Witnesses Favors Transfer

The fifth *Jumara* factor, the location and availability of witnesses, is "[p]robably the most important factor, and the factor most frequently mentioned in passing on a motion to transfer." *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 203 (D. Del. 1998). Trial should take place "where the personal attendance of witnesses through the use of subpoena power can be reasonably assured." *Id.* at 205. Courts have transferred cases where, as here, nonparty witnesses lay beyond the transferor court's trial subpoena power but lay within the trial subpoena power of the transferee court. *Illumina, Inc. v. Complete Genomics, Inc.*, C.A. No. 10-649-RFK, 2010 WL 4818083, at *4 (D. Del. Nov. 9, 2010).

Here, Proofpoint has already identified several potentially relevant third-party witnesses and sources of evidence located in the Northern District of California. For example, California has trial subpoena power over William Mabry

*Inc.*, C.A. No. 17-283, 2017 WL 4543783, at *10 (D. Del. Oct. 11, 2017) (finding

Tyson, third-party author of prior art, while this Court does not.  Mr. Tyson has knowledge of his authored prior art and likely has relevant knowledge of the general state of the art relevant to ZapFraud's asserted patent.  FireEye Docket, D.I. 17, ¶ 6.

Similarly, the Northern District of California has trial subpoena power over attorneys who were involved in prosecuting the ZapFraud patent before the Patent Office, while this Court does not.  Rueckheim Decl., ¶¶ 5, 7-8.  As the prosecuting attorney and patent agent, these persons have knowledge about the arguments made to the Patent Office, claim amendments and examiner interviews relevant to Proofpoint's defense.

Because third party witnesses could be compelled to testify at trial in the Northern District of California but not in the District of Delaware, this factor weighs strongly in favor of transfer.

### G.    The Location of Evidence in Northern California Favors Transfer

The sixth *Jumara* factor, the location of books and records, also favors transfer.  "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer.  Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location."  *In re Genentech, Inc.* 566 F.3d 1338, 1345 (Fed. Cir. 2009).

---

the Northern District of California to be more convenient for those in Colorado).

Both Proofpoint and ZapFraud maintain their principal place of business in the Northern District of California and any potentially relevant evidence will likely come from there and potentially from a team located in Colorado. *See supra* at 11, note 5. Proofpoint does not anticipate that there will be any relevant evidence located in Delaware.

Additionally, third-party companies are headquartered in northern California and are likely to maintain their potentially relevant evidence therein. For example, PayPal and Agari—companies where Dr. Jakobsson worked around the time of filing the asserted patent and obtained additional fraud protection patents thereat—are headquartered in California and likely store their potentially relevant evidence therein. *See* Rueckheim Decl., ¶ 10.

Under similar circumstances, Delaware courts have transferred similar cases to jurisdictions where the bulk of relevant evidence is located. *See Angiodynamics, Inc. v. Vascular Solutions, Inc.*, C.A. No. 09-554-JJF, 2010 WL 3037478 at *4 (D. Del. July 30, 2010) (transferring case when "[a]side from Plaintiff's incorporation, Delaware has a limited connection to this litigation" and "most of the potential and identified witnesses, and relevant records and evidence are located in [the proposed venue]"). This factor weighs strongly in favor of transfer.

### H.    The Enforceability of a Judgment Favors Neither Forum

This seventh factor, judgment enforceability, weighs equally for both fora. Judgments from the District of Delaware and from the Northern District of California are equally enforceable.  In the concurrent litigations, ZapFraud has agreed.  Barracuda Docket, D.I. 27, at 14; FireEye Docket, D.I. 22, at 17.  This factor is neutral.

### I.    Practical Considerations Favor Transfer

The eighth *Jumara* factor, practical considerations that could make the trial easy, expeditious, or inexpensive, favors transfer.  Courts in this district have held that this factor "strongly" favors transfer where neither party has connections to Delaware other than incorporation status, and relevant witnesses and evidence are located in the transferee district but not in Delaware.  *Applied Predictive Techs., Inc. v. MarketDial, Inc.*, C.A. No. 18-963-CFC, 2019 WL 2745724 (D. Del. July 1, 2019), at *5; *Ultravision*, 2019 WL 1985110, at *3.  As explained above, such is the case here.  *See also Williamsburg*, 2020 WL 331119, at *5 (holding practical considerations to strongly favor transfer when most, but not all, of the third parties reside in the proposed venue).

Nor does the presence of the FireEye, Barracuda or Mimecast cases in Delaware weigh against transfer.  FireEye and Barracuda are both California companies who have moved to transfer.  Furthermore, each of these cases are in

15

the very early stages, and none of the defendants have even filed an answer at this point.   In similar scenarios, courts in this district have found that transfer is warranted. *Signal Tech, LLC v. Analog Devices, Inc.*, C.A. No. 11- 1073-RGA, 2012 WL 1134723, at *4 (D. Del April 3, 2012) (practical considerations when there are multiple concurrent Delaware litigations in early stages are speculative given the number of cases that settle); *IpVenture, Inc. v. Acer, Inc.*, 879 F. Supp. 2d 426, 433–34 (D. Del. 2012) (co-pending litigation weighed only slightly against transfer when in early stage).   This factor weighs strongly in favor of transfer.

### J.    Litigants Will Face Less Administrative Congestion in the Northern District of California, Favoring Transfer

The ninth *Jumara* factor, the relatively administrative difficulty in the two fora resulting from court congestion, favors transfer.  According to the most recent Federal Judicial Caseload Statistics, the District of Delaware has 4 judgeships, with 636 pending cases per judgeship including 622 civil filings per judgeship weighted at 1,127 filings per judgeship, while the Northern District of California has 14 judgeships with 809 pending cases per judgeship including 564 civil filings per judgeship weighted at only 599 filings per judgeship.  U.S. Courts, United States District Courts—National Judicial Caseload Profile, 14, 66 (Sep. 30, 2019), https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distcomparison0 930.2019.pdf.  The average time from filing to trial in Delaware is 32.8 months,

compared to 22.8 months in the Northern District of California. *Id.* This factor weighs in favor of transfer. *BlackBird*, 2017 WL 4543783, at *11-12.

### K. The Northern District of California has a Greater Interest in Deciding Local Issues about Proofpoint's Local Workers

The tenth *Jumara* factor, the local interest in deciding local controversies at home, weighs in favor of transfer due to specific allegations of events in California against residents of California.

Here, ZapFraud has made specific allegations unique to California interests. ZapFraud's allegations focus on a meeting that occurred between the parties in Proofpoint headquarters in Sunnyvale California where ZapFraud's technology was presented. D.I. 10, ¶¶ 5, 16-18. At that meeting, those executives then allegedly declined to license the technology and then added a Business Email Compromise protection feature to Proofpoint's products five months later. *Id.* California has a greater interest in deciding the truth of these allegations, which affects the reputations and work of those executives in Sunnyvale. *See In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009) (recognizing when specific allegations "call[] into question the work and reputation of several individuals residing in or near that district"); *see also Abbott Labs. v. Roxane Labs., Inc.*, C.A. No. 12-457-RGA, 2013 WL 2322770, at *26 (D. Del. May 28, 2013) (finding factor slightly in favor of transfer based on potential impact to local employees).

17

Additionally, the largest concentration of Proofpoint's U.S. based employees are in located in northern California. Dials Decl., ¶¶ 3, 5. These employees include researchers and developers who worked on the accused products and have an interest in rebutting ZapFraud's accusations of willful patent infringement with evidence of their own laborious, independent development. *Id.*, ¶¶ 5-6; D.I. 10, ¶ 36. The community of northern California has a unique interest in these individuals and their relevant California activity; Delaware does not. This factor weighs strongly in favor of transfer.

## L. Delaware's Public Policy Weighs Minimally Against Transfer, if at All

The eleventh *Jumara* factor, the public policy of the fora, weighs minimally against transfer. Here, both parties are incorporated in Delaware, a forum that encourages Delaware corporations to resolve their disputes in Delaware courts. *Round Rock Research, LLC v. Dell, Inc.*, 904 F. Supp. 2d 374, 378 (D. Del. 2012). However, "this factor significantly overlaps with why Plaintiff would have chosen Delaware as a venue in the first place" and need not receive "independent weight." *Id.* To the extent courts do grant this factor independent weight, courts give this factor "minimal weight." *Good Tech. Corp. v. AirWatch, LLC*, C.A. No. 14-1092-LPS-CJB, 2015 WL 296501, at \*12 (D. Del. Jan. 21, 2015).

### M.      The State Law Factor is Inapplicable

The twelfth *Jumara* factor, the familiarity of the trial judge with the applicable state laws, has no applicability.  ZapFraud's claims arise only under federal patent laws.  D.I. 10; *See Applied Predictive*, 2019 WL 2745724, at *5.

## VI.   CONCLUSION

For these reasons, Proofpoint respectfully requests that the Court transfer this litigation to the Northern District of California.

                                        /s/ David M. Fry
                                        Karen E. Keller (No. 4489)
                                        David M. Fry (No. 5486)
                                        Nathan R. Hoeschen (No. 6232)
                                        SHAW KELLER LLP
                                        I.M. Pei Building
                                        1105 North Market Street, 12th Floor
                                        Wilmington, DE 19801
                                        (302) 298-0700
                                        kkeller@shawkeller.com
                                        dfry@shawkeller.com
                                        nhoeschen@shawkeller.com
                                        *Attorneys for Defendant*

OF COUNSEL:
Katherine Vidal
Michael R. Rueckheim
WINSTON & STRAWN LLP
275 Middlefield Road, Suite 205
Menlo Park, CA  94025
(650) 858-6500

William M. Logan
WINSTON & STRAWN LLP
1111 Louisiana Street, 25th Floor
Houston, TX  77002-5242
(713) 651-2766


Dated: February 5, 2020

## **<u>CERTIFICATE OF COMPLIANCE</u>**

I hereby certify that this brief complies with the Court's standing orders regarding briefing because it was prepared in 14-point Times New Roman font and contains 4,036 words.

*/s/ David M. Fry*
David M. Fry (No. 5486)
*Attorney for Defendant*
