**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ZAPFRAUD, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 19-1691-CFC |
| | ) | |
| PROOFPOINT, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM ORDER

Pending before the Court in this patent infringement action is Proofpoint, Inc.'s ("Defendant" or "Proofpoint") motion seeking a transfer of venue to the United States District Court for the Northern District of California ("Northern District of California"), which was filed pursuant to 28 U.S.C. § 1404(a) (the "Motion"). (D.I. 19) Plaintiff ZapFraud, Inc. ("Plaintiff" or "ZapFraud") opposes the Motion. For the reasons set forth below, Proofpoint's Motion is DENIED.

### I. BACKGROUND

Below, the Court provides some factual background on the parties and their legal dispute. Additional relevant facts will be set out as necessary in Section II below.

#### A. The Parties

Plaintiff is a Delaware corporation with its principal place of business in Portola Valley, California. (D.I. 29 at ¶ 4) Plaintiff is a "technology company founded by leading e[-]mail security researcher Dr. Bjorn Markus Jakobsson." (*Id.* at ¶ 1) Plaintiff owns the two patents-in-suit, United States Patent Nos. 10,277,628 (the "'628 patent") and 10,609,073 (the "'073 patent"). (*Id.* at ¶ 3) Both the '628 patent and the '073 patent are entitled "Detecting Phishing Attempts";

they both relate to methods for "detecting fraud or phishing attempts in email communications." (*Id.* at ¶¶ 18, 20, 38, 40)

Proofpoint is a Delaware corporation with its principal place of business in Sunnyvale, California. (*Id.* at ¶ 5) Defendant is alleged to directly infringe (by making, using, selling, offering to sell and/or importing), to induce infringement of, and to contributorily infringe the patents in suit, through, *inter alia*, its appliance-based and cloud-based e-mail security products and services, particularly Proofpoint Email Protection, Email Fraud Defense and Proofpoint Essential (the "accused products"). (*Id.* at ¶¶ 6, 25-33, 45-51)

### B.     Procedural Background

The instant case is one of five filed by Plaintiff in this District on September 10, 2019, in which it brought related claims of patent infringement. (D.I. 1) Three of those other four actions are still pending: *ZapFraud, Inc. v. Barracuda Networks, Inc.*, Civil Action No. 19-1687-CFC-CJB ("*Barracuda*"); *ZapFraud, Inc. v. FireEye, Inc.*, Civil Action No. 19-1688-CFC ("*FireEye*"); and *ZapFraud, Inc. v. Mimecast North America, Inc. et al.*, Civil Action No. 19-1690-CFC ("*Mimecast*"). The fifth, *ZapFraud, Inc. v. Fortinet, Inc.* Civil Action No. 19-1689-CFC ("*Fortinet*"), was dismissed by stipulation in December 2019. *Fortinet*, D.I. 13.

Proofpoint filed the Motion on February 5, 2020. (D.I. 19) On February 6, 2020, United States District Judge Colm F. Connolly referred the Motion to the Court, (D.I. 23), having

previously referred other pending motions to the Court in this and related cases, (D.I. 15).[1]

Briefing on the Motion was completed on February 27, 2020.  (D.I. 27)[2]

## II. DISCUSSION

### A. Legal Standard

The Court incorporates by reference herein the legal standard for review of a transfer motion filed pursuant to 28 U.S.C. § 1404(a), which was set out in its Memorandum Order in the *Barracuda* case.  (*Barracuda*, D.I. 44 at 3-4)

### B. Appropriateness of the Transferee Venue

The first step in the transfer analysis is to determine whether this action could have been brought in the proposed transferee venue.  Here, there is no dispute that this action could have been properly brought in the Northern District of California.  (D.I. 20 at 9; D.I. 24 at 4)

### C. Application of the *Jumara* Factors

#### 1. Private Interest Factors

##### a. Plaintiff's choice of forum

---

[1]    Also pending before the Court in this action is Proofpoint's motion to dismiss for failure to state a claim, (D.I. 31), in which Proofpoint joins the *Mimecast* Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and 35 U.S.C. § 101.  In the other three pending actions, there are various motions also pending before the Court; among them are Defendant Barracuda Networks Inc.'s motion to transfer the case against it to the Northern District of California, *Barracuda*, D.I. 21, and Defendant FireEye Inc.'s motion to transfer its case to the Northern District of California, *FireEye*, D.I. 15.

[2]    When Proofpoint filed the instant Motion, Plaintiff's then-operative First Amended Complaint only asserted infringement of the '628 patent. (D.I. 10)  While the Motion was pending, Plaintiff filed the operative Second Amended Complaint, in which it asserts infringement of the '628 patent and the '703 patent. (D.I. 29)  No party has suggested that the filing of the Second Amended Complaint had any impact on the parties' arguments for or against transfer, however; thus, the Court understands those arguments to apply just as well to the '703 patent-related claims as they would to the '628 patent-related claims.

When analyzing the first *Jumara* private interest factor—the "plaintiff's forum preference as manifested in the original choice"—if the plaintiff articulates rational and legitimate reasons for filing in this District, this factor will weigh against transfer. *Pragmatus AV, LLC v. Yahoo! Inc.*, Civil Action No. 11-902-LPS-CJB, 2012 WL 4889438, at *4 (D. Del. Oct. 15, 2012) (citation omitted), *report and recommendation adopted by* 2013 WL 174499 (D. Del. Jan. 16, 2013); *see also Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 753-54 (D. Del. 2012). However, if the plaintiff's choice is made for an improper reason—such as where it is arbitrary, irrational, or selected to impede the efficient and convenient progress of a case—this factor will likely weigh in favor of transfer. *Pragmatus*, 2012 WL 4889438, at *4.

Plaintiff states multiple reasons why it brought this case in the District of Delaware, including that both it and its adversary Proofpoint are incorporated in Delaware. (D.I. 24 at 5) It is rationale and legitimate for an entity to file suit in the state where it makes its corporate home, *see Tessera, Inc. v. Broadcom Corp.*, Civil Action No. 16-379-LPS[-]CJB, Civil Action No. 16-380-LPS-CJB, 2017 WL 1065865, at *4 (D. Del. Mar. 21, 2017) (citing cases), just as it is for the entity to sue its adversary in the state of the adversary's incorporation (i.e., where personal jurisdiction over the defendant and proper venue are assured), *see, e.g.*, *David & Lily Penn, Inc. v. TruckPro, LLC*, Civ. No. 18-1681-LPS, 2019 WL 4671158, at *2 (D. Del. Sept. 25, 2019); *TSMC Tech., Inc. v. Zond, LLC*, Civil Action No. 14-721-LPS-CJB, 2014 WL 7251188, at *15 (D. Del. Dec. 19, 2014) (citing cases), *report and recommendation adopted by* 2015 WL 328334 (D. Del. Jan. 26, 2015).

Because there are legitimate reasons for Plaintiff having filed suit in this Court, this factor weighs against transfer.

    b.  **Defendant's forum preference**

As for the second private interest factor—the defendant's forum preference—Proofpoint prefers to litigate in the Northern District of California. (D.I. 20 at 9-10) In analyzing this factor, the Court has similarly "tended to examine whether the defendant can articulate rational, legitimate reasons to support that preference." *Pragmatus*, 2012 WL 4889438, at *6. Here, Proofpoint asserts that it wishes to litigate in the proposed transferee forum because "it is headquartered [there] and prefers that forum for the convenience of it[s] witnesses[.]" (D.I. 20 at 10) That makes good sense too and so this factor thus supports transfer.[3] *See, e.g.*, *Tessera, Inc.*, 2017 WL 1065865, at *5 (citing cases).

### c. Whether the claims arose elsewhere

The third private interest *Jumara* factor asks "whether the claim arose elsewhere." As to claims for patent infringement, as a matter of law, such claims arise "wherever someone has committed acts of infringement, to wit, 'makes, uses, offers to sell, or sells any patented invention' without authority." *McRo, Inc. v. Activision Blizzard, Inc.*, Civil Action No. 12-1508-LPS-CJB, 2013 WL 6571618, at *5 (D. Del. Dec. 13, 2013) (certain internal quotation marks and citations omitted), *report and recommendation adopted by* 2013 WL 6869866 (D. Del. Dec. 30, 2013). Nevertheless, as to this factor, this Court typically focuses on the location of the production, design and manufacture of the accused instrumentalities. *Id.* (citing cases).

---

[3] Plaintiff suggests that in the analysis of these private interest factors, the movant's choice of forum is automatically entitled to less weight than that given to a plaintiff's choice of forum. (D.I. 24 at 6) The Court disagrees, as it has previously explained why it cannot find any support for that proposition in governing Third Circuit case law. *See, e.g.*, *Elm 3DS Innovations LLC v. SK Hynix Inc.*, Civil Action No. 14-1432-LPS-CJB, 2015 WL 4967139, at *6 n.13 (D. Del. Aug. 20, 2015) (citing cases); *Pragmatus*, 2012 WL 4889438, at *7.

On this score, Proofpoint avers that: (1) the research and development team for two of the three accused products—Proofpoint Email Protection and Proofpoint Essential—work at Proofpoint's Sunnyvale headquarters (the research and development team for the third product works out of Colorado); that (2) Proofpoint's primary marketing, sales, pricing and finance decisions are made at its headquarters; and (3) that a 2015 meeting between the parties (perhaps relevant to willfulness in the case) referenced in the operative complaint took place in the proposed transferee district. (D.I. 20 at 10; D.I. 21 at ¶¶ 2, 5-6, 8) In Plaintiff's view, it was after this 2015 meeting when a Proofpoint research and development team (most of whom work in the proposed transferee district), (D.I. 21 at ¶ 3), added a feature to its products that is relevant to the infringement allegations. (D.I. 29 at ¶¶ 13-15) However, Proofpoint's submitted declaration was vague or silent as to: (1) where the accused product was/is actually commercially made/manufactured; or (2) where offers for sale of the accused product are made. This lack of information is of concern because although Proofpoint indicates that it has 992 employees in northern California, (D.I. 21 at ¶ 3), the record demonstrates that it also has various offices around the country and around the world, (D.I. 25, ex. 1). The accused products are sold throughout the United States. (D.I. 24 at 7 (citing D.I. 25, ex. 2))

With more allegedly infringing acts likely having a larger connection to the proposed transferee district than to other districts, but with the real possibility that a good number of such acts occurred at various locations around the country, the Court finds this factor to weigh slightly in favor of transfer. *Cf. VSLI Tech. LLC v. Intel Corp.,* Civil Action No. 18-966-CFC, 2018 WL 5342650, at *6 (D. Del. Oct. 29, 2018) (concluding the same, where much of the research and development efforts associated with the accused products took place in the proposed transferee

district, but where some took place elsewhere, and where the accused products were marketed and sold throughout the United States).

### d.   Convenience of the parties as indicated by their relative physical and financial condition

In assessing the next private interest factor—"the convenience of the parties as indicated by their relative physical and financial condition"—this Court has traditionally examined a number of issues, including: "(1) the parties' physical location; (2) the associated logistical and operational costs to the parties' employees in traveling to Delaware (as opposed to the proposed transferee district) for litigation purposes; and (3) the relative ability of each party to bear these costs in light of its size and financial wherewithal." *Audatex N. Am., Inc. v. Mitchell Int'l, Inc.*, C.A. No. 12-cv-139 (GMS), 2013 WL 3293611, at *4 (D. Del. June 28, 2013) (internal quotation marks and citations omitted).

Proofpoint argues that the Northern District of California would be more convenient for it. (D.I. 20 at 11-12)  And the Court agrees that it would, as its principal place of business is located there, and certain operations and employees relating to the accused product are located there. (D.I. 21 at ¶¶ 2, 5-6)  Proofpoint also identifies two employees whom it believes could be fact witnesses in this case:  a Director of Product Management (averred to have information about the accused products) and a Proofpoint executive who participated in the 2015 meeting described above. (*Id.* at ¶¶ 7-8)

This inconvenience argument is mitigated, however, by three other considerations.  First, it is hard for Proofpoint to argue that this district is a decidedly inconvenient litigation forum, since it is incorporated here. *See, e.g.*, *Contour IP Holding, LLC v. GoPro, Inc.*, Civil Action No. 15-1108-LPS-CJB, 2017 WL 3189005, at *10 (D. Del. July 6, 2017) (citing cases).  Second, the amount of inconvenience that any Proofpoint employees might face via travel to Delaware is

not likely to be large—particularly if this case does not result in a trial. *See, e.g.*, *id.*, *Human Genome Scis., Inc. v. Genentech, Inc.*, C.A. Nos. 11-082-LPS, 11-156-LPS, 11-328-LPS, 2011 WL 2911797, at *7 (D. Del. July 18, 2011). Third, Proofpoint does not argue that it lacks the resources to litigate here, nor could it credibly do so, as its 2019 gross revenue was $888 million, (D.I. 25, ex. 4 at 2).

As for Plaintiff, it too is located in the Northern District of California, and so is Dr. Jakobsson, its founder and the sole inventor of the patents-in-suit. (D.I. 22 at ¶ 6 & ex. 2; D.I. 29 at ¶ 1) In light of that, while Delaware (its corporate home) would be a convenient place to litigate, the proposed transferee district is certainly not *inconvenient*.

Ultimately, with a few possible employee witnesses located in the proposed transferee district and none in Delaware, but with the parties having ample resources with which to litigate this case, the Court concludes that this factor should slightly favor transfer. *See Tessera, Inc.*, 2017 WL 1065865, at *7.

### e. Convenience of the witnesses to the extent that they may actually be unavailable for trial in one of the fora

The "convenience of the witnesses" is the next factor, "but only to the extent that the witnesses may actually be unavailable for trial in one of the fora." Of particular concern here are non-party fact witnesses, especially those who may not appear of their own volition in the venue-at-issue and who could not be compelled to appear there by subpoena pursuant to Federal Rule of Civil Procedure 45. *ADE Corp. v. KLA-Tencor Corp.*, 138 F. Supp. 2d 565, 568-69 (D. Del. 2001); *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 203 (D. Del. 1998).[4]

---

[4] In *Jumara*, the Third Circuit made clear that in order for this factor to meaningfully favor the movant, the movant must come forward with some amount of specificity. This is evident from the wording of the factor itself, which notes that the witnesses' convenience should be considered "only to the extent that the witnesses may *actually be* unavailable for trial

As to this factor, Proofpoint mentions two types of witnesses who reside in the proposed transferee district: (1) William Mabry Tyson, the author of an article which is asserted to be a prior art reference to (at least) the '628 patent, (D.I. 20 at 12-13 (citing *FireEye*, D.I. 17 at ¶ 6) ("Gratz Decl.")); and (2) the two attorneys who prosecuted the '628 patent, (D.I. 20 at 13; D.I. 22 at ¶¶ 5, 7-9). In light of the nature of the asserted claims in this case, the Court thinks it understands why Mr. Tyson is said to possess information about relevant prior art. (Gratz Decl. at ¶ 6; D.I. 29 at ¶¶ 28, 46) On the other hand, Proofpoint did not do a good job explaining why the two prosecuting attorneys will likely be relevant to claims at issue in this case. (D.I. 27 at 7) In any event, even assuming that it is likely that these individuals would be trial witnesses, FireEye fails to put forward any evidence demonstrating that they would "actually be unavailable" for trial.

With few potential third party fact witnesses located within the subpoena power of the proposed transferee district, and with no evidence suggesting they will be unlikely to testify at trial in Delaware, at most this factor only slightly favors transfer. *See Tessera, Inc.*, 2017 WL 1065865, at *9; *Papst Licensing GmbH & Co. KG v. Lattice Semiconductor Corp.*, 126 F. Supp. 3d 430, 443 (D. Del. 2015).

### f. Location of relevant evidence

---

in one of the fora[.]" *Jumara*, 55 F.3d at 879 (emphasis added). And it is evident from the legal authority that the *Jumara* Court cited to in setting out this factor. *See Elm 3DS*, 2015 WL 4967139, at *8 (citing *Jumara*, 55 F.3d at 879). In light of this, in order for the movant to convincingly argue that this factor squarely favors transfer, the movant must provide specificity as to: (1) the particular witness to whom it is referring; (2) what that person's testimony might have to do with a trial in this case; and (3) what reason there is to think that the person will "actually be" unavailable for trial (as opposed to the proffer of a guess or speculation on that front). *See id.*

Next, the Court considers "the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (internal quotation marks and citation omitted). Yet this factor is commonly given little weight, as technological advances have "shortened the time it takes to transfer information, reduced the bulk or size of documents or things on which information is recorded . . . and have lowered the cost of moving that information from one place to another." *Cypress Semiconductor Corp. v. Integrated Circuit Sys., Inc.*, No. 01-199-SLR, 2001 WL 1617186, at *3 (D. Del. Nov. 28, 2001) (internal quotation marks and citation omitted).

It is likely true that the bulk of the relevant records in this case will be in the possession of the accused infringer, and Proofpoint asserts that most of those relevant records are located in the proposed transferee district (or Colorado). (D.I. 20 at 14) Proofpoint further notes that third parties PayPal, Inc. and Agari Data, Inc. (where Dr. Jakobsson is said to have worked in a relevant time frame) are located in the proposed transferee district. (*Id.* (citing D.I. 22 at ¶ 10)) That said, there is no indication that any such relevant records could not be easily produced for trial in Delaware. (D.I. 24 at 15) This factor should only slightly favor transfer, and should not have a significant impact in the overall calculus. *Genedics, LLC v. Meta Co.*, Civil Action No. 17-1062-CJB, 2018 WL 417950, at *8 (D. Del. Jan. 12, 2018).

        **2.**     **Public Interest Factors**

The Court below addresses the public interest factors that are in dispute here.

### a. Practical considerations that could make the trial easy, expeditious, or inexpensive

The Court first considers the "practical considerations" factor. As this is a "public interest" factor, it requires that "at least some attention [must] be paid to the *public* costs of litigation[.]" *Schubert v. Cree, Inc.*, Civil Action No. 12-922-GMS, 2013 WL 550192, at *5 (D. Del. Feb. 14, 2013) (emphasis in original).

The parties focus their arguments on the fact that Plaintiff filed four other cases in this District, all of which involve the same patents and three of which are still pending. (*See* D.I. 20 at 15-16; D.I. 24 at 15-17; D.I. 27 at 8)[5] Of the four remaining cases, the Defendants in three have filed transfer motions; one case, the *Mimecast* case, will remain in this district no matter what happens with the transfer motions. Judicial economy counsels in favor of having one judge in one district oversee all related cases involving the same patent. *See Papst Licensing*, 126 F. Supp. 3d at 444; *Elm 3DS Innovations LLC v. SK Hynix Inc.*, Civil Action No. 14-1432-LPS-CJB, 2015 WL 4967139, at *10-11 (D. Del. Aug. 20, 2015). And at the time the Motion was filed, it could have reasonably been anticipated that some of these other related cases would continue on in this Court for some time (as they have here) and require the Court to expend resources on them. In light of this, the Court finds this factor to weigh against transfer. *See Elm 3DS*, 2015 WL 4967139, at *10-11.

### b. The relative administrative difficulty in the two fora resulting from court congestion

---

[5] The Court rejects Proofpoint's arguments that witnesses and evidence located in the transferee forum tip this factor in favor of transfer. (D.I. 20 at 15) These facts have already been taken into account as relevant to other private interest *Jumara* factors, and the Court will not "double count" them here with respect to this public interest factor. *See Elm 3DS*, 2015 WL 4967139, at *11.

The next factor is the relative administrative difficulty in the two fora resulting from court congestion. Proofpoint cites to 2009 statistics showing that this district's judges had a much higher number of filings per judgeship on a weighted basis than did judges in the proposed transferee district, and that the average time from filing to trial in a civil case was 10 months faster in the proposed transferee district. (D.I. 20 at 16-17) Plaintiff responds that: (1) these statistics do not focus solely on patent cases like this one; (2) when you look at patent litigation in the districts in 2019, the average time to certain pre-trial milestones (like claim construction) is much closer; (3) the 2019 patent statistics were skewed, because the proposed transferee district had only six patent cases go to trial in that year; and (4) when you look at 2018 patent statistics for the two districts—a year in which the proposed transferee district had a much larger number of patent cases go to trial (29)—its time to trial was demonstrably higher than that in this district. (D.I. 24 at 18 & n.12; D.I. 25, ex. 5) Indeed, it is notable that of the three Defendants in the related cases who are seeking transfer, Proofpoint was the only one that made an argument that this factor was anything other than neutral.

Both districts are surely plenty busy. But in light of the entirety of the statistical evidence presented, the Court believes this factor should be neutral. *See Tessera, Inc.*, 2017 WL 1065865, at *11.

### c. Local interests in deciding local controversies at home

In patent litigation, the local interest factor is typically neutral, as patent issues tend to raise controversies that are more properly viewed as national, not local, in scope. *Graphics Props. Holdings Inc. v. Asus Comput. Int'l, Inc.*, 964 F. Supp. 2d 320, 330 (D. Del. 2013). Nevertheless, if there is a showing that the case has outsized resonance to the citizens of one of

the districts, that could cause this factor to meaningfully favor one of the parties. *See Genedics*, 2018 WL 417950, at *9 & n.7 (citing cases).

Here, in arguing that this factor should redound in its favor, Proofpoint argues that: (1) the outcome of this case will affect the reputation of its executives, who are alleged to have made wrongful use of Plaintiff's technology after the 2015 meeting; and (2) the outcome will also affect its employees who researched and developed the accused products. (D.I. 20 at 17-18) Plaintiff rightly counters that Delaware also has an interest in adjudicating disputes between two companies incorporated here. *See Ultravision Techs., LLC v. RMG Networks Holding Corp.*, Civil Action No. 18-1333-CFC, 2019 WL 1985110, at *3 (D. Del. May 6, 2019) (*cited in* D.I. 24 at 19-20).

With both sides having something to say, but with neither side demonstrating that this case will significantly affect the public at large in either district, this factor is neutral. *See David & Lily Penn, Inc.*, 2019 WL 4671158, at *5.

####   d.   Public policies of the fora

As for the "public policies of the fora," our Court has noted that "the public policy of Delaware encourages the use by Delaware corporations of Delaware as a forum for resolution of business disputes." *Good Tech. Corp. v. MobileIron, Inc.*, Civil Action No. 14-1308-LPS-CJB, 2015 WL 1458091, at *10 (D. Del. Mar. 27, 2015) (internal quotation marks and citation omitted). Even Proofpoint acknowledges that this factor weighs against transfer to some extent, (D.I. 20 at 18), and the Court agrees that it does weigh against transfer, *see Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, Civil Action No. 15-1168-LPS-CJB 2016 WL 8677211, at *12 (D. Del. Sept. 23, 2016).

###   3.   Conclusion Regarding Impact of *Jumara* Factors

13

In sum, Plaintiff's "forum preference as manifested in the original choice," the "practical considerations" factor and the public policies of Delaware factor weigh squarely against transfer. On the other hand, Proofpoint's forum preference squarely favors transfer, while the "whether the claim arose elsewhere" factor, the convenience of the parties factor, the convenience of the witnesses factor and the location of evidence factor weigh only slightly in favor of transfer. The other factors are neutral.

In the end, there are reasons why both districts would be understandable locations for this suit (one being where both sides are incorporated, the other where both sides have their principal places of business). And there are other reasons to either keep the case here or to transfer the case. With the *Jumara* factors not "strongly" favoring transfer, the Court concludes that the Motion should be denied.

### III.  CONCLUSION

For the reasons set out above, the Court orders that Defendant's Motion be DENIED.[6]

Dated: July 28, 2020

*Christopher J. Burke*
Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE

---

[6]  The Court also DENIES the parties' requests for oral argument. (D.I. 18; D.I. 37)